Thank you. Please be seated. The trial case is Mascio v. Colvin. Mr. Cortez? Yes, sir. Good morning, Your Honor. Good morning, court. My name is David Cortez. I represent Bonnilyn Mascio, the appellant in this case. I'm going to go directly, because of the limitations of time, I'm going to go directly to the discussion of issues. The first of which, and this is out of order from the briefs, but for purposes of this argument, the first issue I'd like to discuss is the sufficiency of the hypothetical question. And, of course, in this circuit, when we discuss that issue, we have to begin with the case of Walker v. Bowen, which this court decided some time ago, 89. There the court said that for a hypothetical question by an ALJ to the VE to be sufficient, the hypothetical has to set out all of the claimant's significant limitations and has to do that with such specificity so that the VE knows what limitations the claimant has. In this case, the ALJ found that Ms. Mascio has a moderate limitation in concentration, persistence, and pace. I'll call that CPP to save time. The judge himself found that Ms. Mascio has a moderate limitation of CPP. That being the case, that had to be part of the hypothetical question. As a matter of law, he found this limitation on account of her having significant pain and having to take medication. The medication was causing her to have disrupted thought processes, I believe is the way the judge put it. The ALJ also found that Ms. Mascio had adjustment disorder and that on account of that, she was limited to unskilled work. The ALJ mentioned neither of those limitations in the hypothetical question. And so, this should be an unbelievably easy case. It would be in violation of the Walker v. Bowen case to allow this case to stand. But, there's a little rub here. The VE, on his own, and without having been told a word about mental limitation, testified that she was able to do three jobs. And by happenstance, he named three unskilled jobs. Question, does that cure the ALJ's clear legal error? Answer, no. Why not? Because VE must have limited Ms. Mascio to unskilled work for some reason other than mental limitation. He could not have limited Ms. Mascio to unskilled work because of mental limitation because the ALJ said not a word about that. What could explain the VE's limiting her to unskilled? And I say limiting her. He didn't limit her. He simply identified three unskilled jobs. He may have thought that she could do semi-skilled, but to be on the safe side, he named unskilled work. What could explain, then, the VE's naming three unskilled jobs that she could do? It could be explained by the fact that she had only a GED and that her prior work experience was limited to unskilled work and some semi-skilled work. If the VE were called right now to testify, and I suppose that under certain circumstances you can take testimony, if you were to call the VE and say, Ms. VE, did Ms. Mascio have any mental limitations? The VE would have to say, I assume not. And then you'd press, well, why would you assume that? And the VE would correctly say, well, because if she had mental limitations, the judge surely would have told me that. And that would have been a correct answer, except for the fact that the ALJ did mention and did say in his decision that Ms. Mascio was limited to moderate limitation of CPP. Having failed to mention that in the hypothetical question, the question is bad. The VE's testimony does not cure the error, and the case should be reversed, remanded, and proper. When is the hypothetical question presented in these hearings? Inevitably last, Your Honor. It's always the last. In the live hearing? Yes. Okay. So you're there, right? Yes. Was there an objection posed to that question? No, there was not. Does that matter? No, it does not. At that stage, Your Honor, and the reason why it doesn't matter is largely because of this. At the fifth stage, the burden of proof is on the commissioner to establish not a burden of persuasion. It's a burden of going forward. The VE has to establish that given the limitations, and they have to be all the limitations that the claimant has, the VE has to establish that by going forward that these are three jobs that the claimant can do. That was not done in this case. It's simply a matter of there being, you might say, a fumble that occurred between the center snapping the ball to the quarterback and then handing off to the fullback. There has to be a smooth transition, and the fullback has to get the football. Here, the fullback did not get the football. He didn't get anything concerning mental limitation. In effect, he went through the line carrying nothing. He was told other limitations. But what's the role of the attorney in this context? Why not signal to the fullback, hey, wait a minute. Because it's not his burden, Your Honor. I don't think it would be appropriate for the ALJ. He might, for tactical reasons, choose to do that. But he's not there to cure any error that's committed, any fatal error. But without your objection, this is evidence that's come into the record. Why couldn't he consider it? I don't understand the question, Your Honor. Why? Well, if this hypothetical question has been asked and you say that the response of the vocational expert was legally incorrect or insufficient, but you've not made an objection on that point, why wouldn't the ALJ be entitled to consider it? The ALJ would be entitled to consider the VE's response only if the ALJ had handed off to the VE a hypothetical question that contained all of the mental limitations and had done so with such specificity that the VE knew what those limitations were. That's Walker v. Bowen. And again, if you were to call the VE into court and ask, did Ms. Mascio have any mental limitations? She would say, no, she didn't. Now, what were the other issues? The other issues were the ALJ's failure to do the function-by-function analysis and to do a fairly specific explanation as to the limitations that Ms. Mascio had. We don't know. We have no findings concerning how long Ms. Mascio can sit, stand, how much she can carry, and by the way, she has carpal tunnel syndrome. There are no findings as to how much she can lift and carry, how long she can stand, and so on. The case law says that you cannot answer that question just by saying light, medium, sedentary, and so on. There was not a whiff of explanation as to any of the strength limitations that Ms. Mascio has. The last issue is the question of the failure to give great weight. The evidence of pain in this case was extraordinarily substantial. You have compression of a nerve root. That alone, you have at another nerve root, you have- Is the ALJ required to give great weight if they just found the witness not believable? The ALJ cannot make that call without first determining, is the evidence of pain substantial? And then he has to answer that question first, and if the answer to that question is yes, then the ALJ must give great weight to the testimony, and then he continues to weigh. He's not required in the end to give great weight, but he has to give- Where the evidence of pain is substantial, he has to give great initial weight, and then, of course, he does a weighing process. But we know that there was no- We know that the evidence of pain was substantial. And I have to say this. As an officer of the court, I don't mean to suggest that when the court in Smith and Felton Miller- May I continue that? Please do. When the court in Smith and Felton Miller used the expression substantial evidence, I don't contend that it meant a mere scintilla. That would not have been logical, because in every case, the claimant establishes that. Smith and Felton Miller couldn't have meant substantial in that sense. It meant considerable, strong, compelling evidence. We have that here. We have that in that stronger sense of the word substantial. Was there substantial evidence to support her pain testimony? Yes. Was there the trigger, then, for applying the great weight rule? Yes. Was the great weight rule applied? No. Was there error under Smith and Felton Miller? Yes. For that reason, the case should be reversed and remanded. We've got some time for rebuttal. Thank you, Your Honor. Mr. Goldenberg. Thank you, Your Honors. My name is Mark Goldenberg. I'm an attorney for the Social Security Administration in the Eastern District, special assistant to the United States Attorney for the Eastern District of North Carolina, and I will present the arguments on behalf of the Commissioner. I want to start first with this hearing testimony that Your Honors asked about. I would agree with counsel, the appellant, that he'd have to cross on that question. The issue in this case would be was there the ALJ's burden, not the V's burden, to determine whether there are other jobs in the national economy that the claimant can perform. If he had not presented unskilled work and then he found in his RFC, as he did here, that she was limited to unskilled work, he would not be able to use that VE testimony had he not identified unskilled jobs. But as it turned out, he could. Had he not done so, all the jobs he had given were skilled because ALJ didn't put that in the hypothetical, then he would have to go back to a VE to say, I gave you the wrong RFC. He can do it by recall or he can send him a list of questions and interrogatories, and he would have to respond to are there jobs with unskilled jobs. In this case, he didn't have to because the VE specifically stated that the jobs he was identifying are unskilled. So the ALJ was able to use that testimony to meet his burden. Well, what about the argument that it's not enough simply to show that the claimant can do the work, do the task, but it's also necessary to show that she can stay on task? And that's not a function of simply saying that she can do unskilled labor by itself doesn't answer that question. Well, I would have two responses. First, although the district court found that unskilled work did cover that limitation, I would actually contend that that's not what the ALJ did. That was more of a harmless error opinion finding. Although I believe the circuits have held that unskilled work does cover, many of them have, the 8th Circuit Windchill citing the 7th Circuit Simla, citing the 9th Circuit Stubbs-Danielson, Howard and the 8th Circuit, all said that it could cover. But what happened here was he found unskilled work because of an adjustment disorder, not because of the limitation, concentration, persistence, and pace. When he did his RFC analysis, and the moderate finding is Step 3, he did what he's required to do is called PRT. We call it PRTF in the brief because at the first two levels it's a form. There's no form such as PRT when the ALJ does it inside the decision. And it's PRT. He's required to determine if a person meets a listing. If he meets a listing, he is disabled. And to meet a listing, you have to have at least a marked limitation. When he found moderate, he just found that there is, it's a Benford type of finding. It doesn't have to be, but until he gets to the RFC where he's required to define it in a limitation, there's nothing there to say that there's a limitation. So when he got to his RFC discussion, he specifically found that the side effect, he said the moderate limitation in Step 3 was because of pain medication, side effects of pain medication. When he got to the RFC discussion, he took the evidence and found it wasn't credible because no physicians documented any complaints of these side effects. He also went through to show that a lot of these pain medications were based on addiction, and she actually was in prison for 10 months of this period under review for selling her prescription medications. So he found, and he put all that in his decision, so he really found that whole medication issue not credible, and he left it out. He didn't say the unskilled for that purpose. Mr. Goldenberg, let me go back to the question I asked Mr. Cortes, and this may be a function of the fact that we don't hear as many of these cases on appeal, at least that argument. But why isn't it the lawyer's burden to correct a mistake in a hypothetical at the hearing level? Well, I think often it is. I'm not sure it would be here because at the point that he gave a hypothetical, he doesn't make an RFC finding until later when he does his decision. So at the point he made a hypothetical, I would say the counsel would not have known that there's an error in the hypothetical because he didn't know he was going to find a limitation on skilled work. So if the V.E. could have given jobs of both unskilled and skilled, it would have made it a hypothetical. It happens he gave all unskilled jobs. But I thought the problem was that he failed to include the mental health issues in the hypothetical. Clearly that's something that the lawyer would have recognized as a problem. That, Your Honor, I would agree with. Yes. If he felt that there was a limitation, then he should have used that. So what's the upshot of that? That's waived? Courts have not held that that is waived, the district courts that have. But certainly some have, but it depends on the degree. The claimant's lawyer gets two bites at the apples with that. Two bites, Your Honor? Well, he didn't object to it at the hearing, but they get to raise it basically de novo. Well, as the appellate, I think, said correctly, the burden at Step 5, the Supreme Court shifts to the commissioner to show other jobs. Up to the first four steps of the sequential evaluation process, the burden's on the claimant. So at Step 5, the commissioner must show that there are other jobs in the national economy. He would need adequate testimony from a V.E. So if the testimony does not, a V.E. testimony, he's relying on the V.E. testimony here, and if that doesn't match the RFC finding, then the commissioner would have a problem. Even if it wasn't raised, it would be the commissioner's error. But where it does match, as it did in this case, then there's no error. So if he has further complaints, further issues, in this case, because there's an argument that he didn't put in a limitation for concentration, persistence, and pace, he should have raised that with the ALJ. Now, if the evidence showed that there really were limitations and the ALJ's discussion and reasons he found that not credible were not good reasons, which in this case I believe they were very good reasons, then you could still at this point argue that the appellate could argue, well, it was an insufficient RFC. I would disagree that the appellate is cited to a Fourth Circuit case saying that the hypothetical has to be sufficient, has all the limitations. What actually has been clarified in Mickles and other cases in the Fourth Circuit and every other circuit is that only the RFC limitations that are found credible have to be in the hypothetical. So really what we're discussing is the legitimacy of the RFC finding. Let me ask you about these RFC assessments because there are two of them in the record. The ALJ apparently relied on one almost exclusively. And there's a sort of a, I don't know what's going on in the ALJ's findings where he gets to the relevant issue about whose opinion matters. There's a blank there with respect to the assessment. Can you explain that? Sorry, there's a blank? Let me just read it to you. In discussing Exhibit 12-F, the ALJ's written memoranda trails off when he says this, such as dangerous machinery or heights, he references Exhibit 12-F, because this opinion is based on much of the objective medical evidence of record and takes into account the claimant's subjective complaints. The undersigned gives this assessment and there's a blank there. What's that about? I did notice that. That's, I don't know, I can't answer that question why there's a blank. But he did find that there's no exposure to hazards such as unprotected heights or dangerous machinery. So he found that. Well, but he doesn't resolve the conflict in these exhibits. I mean, they're conflicting assessments on the various characteristics that are relevant to this case. So why shouldn't we send it back to make Google work? So I would like, what page was that on? Well, I'm talking about Exhibits 12-F and 20-F, the two RFCs, the function-by-function analysis. And the 12-F examiner has findings with respect to the limitation types. The 20-F examiner has findings. Sometimes they're consistent, sometimes they contradict, but the ALJ simply focuses on one to the exclusion of the other. So when you get to the ALJ level, that's a de novo determination. Technically it was a de novo determination at each of the first two levels as well, and those statements were made for the purpose of the initial determination and for reconsideration determination. When it gets appealed to the third level, the ALJ hearing, he only has to accept one or the other, or theoretically neither. He can reject them both. And I think where he found those limitations in the RFC, even though he didn't finish the discussion, you have to give him the benefit of the doubt that he found the more strict one credible because he found those limitations in the RFC. So I don't know what happened to his discussion, why that tailed off, but a decision writer probably missed that and didn't fill in the blank. But he found the more strict finding and put that limitation into the RFC. Do we have any precedent in this circuit recognizing the application of the great weight rule? No, absolutely not, Your Honor. This is totally a made-up rule. It doesn't exist. There's a great weight rule in the regulations referring to a treating physician that's uncontradicted, nothing about claimant's credibility. In fact, even Smith and Felton Miller, which appellants were lying on to come up with this idea, and I cite from them, the claimant's own, these are Fourth Circuit cases, the claimant's own statements regarding her pain are not afforded any presumption. Rather, under the regulations, this evaluation of the claimant's pain must be taken into account, not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings. That was a citing I'm correct. So there's never an idea that you get great weight even if you make statements. If the ALJ gave good reasons to reject those statements, which he did here, then the substantial evidence rule is under 405G, which is 42 U.S.C. 405G, which is 205G of the Act. It says the findings of the commissioner as to any fact is supported by substantial evidence shall be conclusive. And every case ever since then has interpreted that to mean if the ALJ gave good reasons for his determination, then he's given a decision that's supported by substantial evidence, and that will be accepted. There's never a claimant is arguing here that even if that's all that's true, and the ALJ's determination is supported by substantial evidence, if I've got claims to say that my statements are also supported by substantial evidence, then I'm entitled to priority. That's that great weight priority. It doesn't exist in law anywhere. Did the ALJ dismiss out of hand her pain complaints? No, not at all. I mean, the limitation to light work was based primarily on the pain. She had back surgery, significant back surgery. She did, there is evidence, at least before it became addictive or whatever her other alternative motives were for getting medications, 50 hydrocodone a week and things that the physicians stopped giving to her because of that, that she had, there was a point where she had pain. And she continues to allege it. It disappears. As the ALJ stops the evidence, you can see in November 2007, there's nothing from November 2007 through December 1, 2009, where this hearing ends, where this period under review ends, of her going to physician. In other words, 10 months there she was incarcerated for selling those. But even there she was, in her testimony, she worked in prison. So she did mention it again in 2010 later when she came back with knee problems. She said, I still have back pain and I'm still taking, she's still taking Vicodin. So he found, didn't find the pain credible. He found the pain credible or else he would have limited her to light work. Light work is a very specific limitation. It just didn't find the side effect of the medication credible for a limitation. If I can just sum up. In the function by function, again, this is out of context, the function is meant to be to compare where the DOT, 96-8PSSR says specifically that these things are done to decide which exertional level is appropriate. As long as that is understandable, it's fine. Every court has said so. So the function by function is when you compare it to past relevant work as performed by the claimant specifically because it's its own job. It's not really in the DOT. But as generally performed past relevant work or at step five as we did here, the DOT is very explicit. It's the same definitions as here. And he said light work is defined in 20 CFR 404-56-7, 416-967. That's what the ALJs determine. That's very well defined. It's the same definitions as the DOT. There's no ambiguity here. Courts have held that it's sufficient. Even when past relevant work they've held that it's harmless error not to do it. So at step five, it's not even brought up. It's not even error, let alone harmless error. Bjornsen v. Posner, again, he just turns that upside down. File list that he cites too says remand and Bjornsen error is not always necessary. If the ALJ has otherwise explained its conclusion adequately, this is a Seventh Circuit case discussing its own Seventh Circuit Bjornsen case, inclusionist language can be harmless. Here in file list, the ALJ did offer reasons grounded in the evidence, and so it can proceed to examine them. So, you know, nobody has held that using that boilerplate language is an error unless the ALJ doesn't do the correct evaluation. And in this case, he did. Anything else, Mr. Goldenberg? No. Thank you very much. I apologize. It's going up, not down. Thank you. Mr. Cortez, you have some rebuttal time. The first thing I'd like to address is the treatment by counsel of the Smith case and the Felton Miller case concerning the great weight rule. There is indeed a great weight rule, and it was recognized, its existence was recognized in both Smith and Felton Miller. Those cases found that the great weight rule does not arise out of Craig. I argued in those two cases, those were my cases, I argued that the great weight rule was triggered by Craig, and I argued that if a claimant passes step one of the Craig analysis, then that gives rise, that triggers the great weight rule. This court said, no, that's not correct. It went on to say that there is a great weight rule, and we see it recited in the cases. And, by the way, to hear it said that there is no such thing as a great weight rule is astounding because in those two prior cases, I submitted tons of great weight cases from all over the circuits. I didn't cite those cases here because of the outcome of Smith and Felton Miller, which said that it doesn't arise out of the Craig case. It said that the great weight rule is triggered when the plaintiff shows substantial evidence of pain and is able to support her testimony with substantial evidence of pain. That occurred here. I didn't go to those other circuits. I came to this circuit for precedent. I went to Smith, and I went to Felton Miller. All those other cases fade into not oblivion. They remain relevant for showing that there is a great weight rule, but they're not immediately controlling here. Smith and Felton Miller are. Well, they're unpublished, so they're not binding. That's correct. That's correct. And, as a matter of fact, I would concede that the way that Smith and Felton Miller handled the issue was correct. I think I asked for too much. I was asserting that there was a presumption. Presumption is too strong a word for the treatment that the court should give or that an ALJ should give to someone who's passed step one. And I don't argue that here. I don't argue the same thing that I did in Smith and in Felton Miller. I argue Smith and Felton Miller themselves. I take the rule that those two cases said should be. And I say what Felton Miller said and Smith. If there is substantial evidence to support, and I believe it referred to objective evidence, to support the plaintiff's allegations of pain, then and only then does the plaintiff get the benefit of the great weight rule. And that makes sense. There's no reason why that shouldn't be. Well, does giving great weight undermine ALJ's ability to assess the record as a whole? To a degree. In the sense that it guides the judge, as any other rule of fact finding. There are rules of fact finding. In other contexts, the judge is constrained to give great weight to certain kind of testimony. That's all that happens here. We're not saying that the ALJ's, we're not saying that it should be given controlling weight. There's a big difference between giving testimony controlling weight and giving it great weight. To ask for controlling weight would be clearly incorrect. That would be a total constraint on the ALJ's discretion. We don't ask for that. If I may, the idea that the ALJ did not find a moderate limitation in CPP, which is what opposing counsel argues, is totally incorrect. Of course the ALJ found moderate limitation. He said so, and he never backed away from that. He simply failed to put that in the hypothetical question. Finally, the opposing counsel says that the ALJ found unskilled. He put unskilled in the RFC because of the adjustment order. If that's true, then what did he do with moderate limitation? Where does that appear? It's a concession of error, I would submit. Because he never accounted for the moderate limitation of CPP in the hypothetical question. That's if you accept opposing counsel's view of things. My view of things is that moderate limitation of CPP was simply never mentioned, nor was unskilled. The distinction between being able to learn a job and being able to stay on task is a monumental distinction. And it's the reason for there being so many cases that support my position. Thank you very much, Mr. Cortes. Thank you, Your Honors. I'll ask the clerk if she will adjourn court until the next term of court. And we'll come down and recounsel. This honorable court is adjourned, time is up.
judges: G. Steven Agee, Albert Diaz, Henry F. Floyd